1              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF CONNECTICUT
2
  - - - - - - - - - - - - - - x
3                              :
  UNITED STATES OF AMERICA,    :   No. 3:18-cr-00095(SRU)
4                Government,   :   915 Lafayette Boulevard
                               :   Bridgeport, Connecticut
5           v.                 :
                               :   October 25, 2018
6  YEHUDI MANZANO,             :
                 Defendant.    :
7  - - - - - - - - - - - - - - x

8

9                      PRETRIAL CONFERENCE

10

11 B E F O R E:

        THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.
12

13

14 A P P E A R A N C E S:

15      FOR THE GOVERNMENT:

16          UNITED STATES ATTORNEY'S OFFICE
                157 Church Street, 25th Floor
17              New Haven, Connecticut  06510
            BY:  NEERAJ N. PATEL, AUSA
18               SARAH P. KARWAN, AUSA

19      FOR THE DEFENDANT:

20          THE PATTIS LAW FIRM, LLC
                383 Orange Street, First Floor
21              New Haven, Connecticut  06511
            BY:  NORMAN A. PATTIS, ESQ.

22

23

24

25                              Sharon L. Masse, RMR, CRR
                                Official Court Reporter

1          (Proceedings commenced at 5:00 p.m.)

2          THE COURT:  All right.  We are in Chambers for

3    the pretrial conference in United States v. Manzano.

4    Would everybody indicate who they are.

5          MR. PATEL:  Sure, Your Honor.  Neeraj Patel on

6    behalf of the government.  With me here is Sarah Karwan

7    and FBI Agent Amy Noto.

8          MR. PATTIS:  Norm Pattis on behalf of

9    Mr. Manzano, Judge.  And my understanding was he was

10   excused from being present this evening?

11         THE COURT:  Oh, yes, yes.

12         Okay.  Well, I got the government's omnibus

13   motion in limine this morning.  So I thought maybe we'd

14   run through that.

15         Motion to sequester witnesses can be granted, I

16   assume, absent objection?

17         MR. PATTIS:   Correct, sir.

18         THE COURT:  The motion to refer to the victim by

19   initials during trial I assume can be granted, absent

20   objection?

21         MR. PATTIS:  Well, I object to characterizing

22   her as a victim, other than she's a complaining witness,

23   until there's a finding of fact.  And so my contention

24   would be "victim" is prejudicial.  If we can just refer to

25   her as a minor.

1              THE COURT:  Yes, fine.  Whatever.

2              MR. PATEL:  So will we still be referring to

3    her, when we address her, by her initials or --

4              THE COURT:  Well, you can call her "M," rather

5    than "MM."

6              MR. PATEL:  Yes, that's fine.

7              MR. PATTIS:  I don't know whether the government

8    will take a position on the following:  We are in the

9    possession of screenshots of various communications of

10   hers.  She used three names.  "MM" is the name on her

11   birth certificate.  She has other names.  Does the rule

12   apply to that as well?

13             If I were to show her a screenshot where she's

14   Jane Doe, let's say, what then?  Because she's known to

15   the world by three names, and people follow her on social

16   media communications.  And I just look to the Court for

17   guidance.  I'm not looking to make a fight of this.  I

18   just am concerned that I don't want to be construed out of

19   compliance with your order if I show her something and

20   it's got a different name on it.

21             THE COURT:  Well, I mean, if that's -- well, let

22   me hear from the government.

23             MR. PATEL:  I suppose you can show her the

24   screenshots without actually saying the name out loud.

25             MR. PATTIS:  Possibly, but I may want to suggest

1    to the jury that she's a person who adopts an identity of

2    convenience.  And so if the Court is going to permit me to

3    put on evidence about reasonable mistake as to age, her

4    credibility will become more important than it might

5    otherwise.  So perhaps we should reserve that until you

6    make that decision, and I won't put on the names before

7    the jury without the Court's permission.

8              MR. PATEL:  That's fine.

9              THE COURT:  Okay.  There's a motion requesting

10   child pornography not be displayed to the public gallery.

11             MR. PATTIS:  No objection.

12             THE COURT:  That can be granted.  We'll have to

13   figure out how to do that technically, but I think that's

14   possible.

15             I didn't understand motion permitting the FBI

16   digital forensic examiner to testify as a lay witness.

17             MR. PATEL:  In other words, Your Honor, we're

18   suggesting that testimony he's offering is not expert

19   testimony.  And so if there's an objection that his

20   testimony, which we've outlined here, is expert testimony,

21   I'd like to deal with that beforehand rather than when

22   he's on the stand.

23             MR. PATTIS:  So we should deal with it

24   beforehand.  I only had a chance to read the government's

25   motion this morning.  I completed evidence in something

1    yesterday.  And I do take the position that, as described,

2    he is an expert.  And I think there's a *Melendez-Diaz*

3    challenge implicit in what the government proffers.  My

4    understanding is he used Cellebrite and/or other

5    technology, and that this is just the printout.  I can't

6    confront the black box.  I can only confront the operator

7    of the black box.  And if the operator has no

8    comprehension as to what the black box does, but it simply

9    spews data out, I can't confront that.

10            So my view is anybody who comes to testify about

11   how a piece of computer software yields data is open to

12   cross-examination about their comprehension of that data.

13   They simply can't come in and say, "It's reliable because

14   I rely upon it."  And so I do view this as expert

15   testimony.

16            MR. PATEL:  I would just cite the case law,

17   including Second Circuit, that has held that it's not

18   expert testimony.

19            MR. PATTIS:  Well, you don't -- fine, go ahead.

20   I don't think they take account of *Melendez-Diaz.*  The law

21   is quite clear, experts can rely on hearsay when they

22   opine, and that includes out-of-court declarations and

23   statements made by others for purposes of forming their

24   opinion.

25            These are not human declarations, but they are

1  the function or equivalent of human declarations.  It's

2  data.  It's data that's been produced, and under

3  *Melendez-Diaz* I have the right to confront the production

4  of that data.  A person can't come in and simply read from

5  a black box and say "I rely on it because it's reliable"

6  and be square with *Melendez-Diaz*.

7          This issue has come up increasingly in state

8  court, where I spend most of my time, rather than federal

9  court, and I realize I'm not there now.  But it is --

10  there is a case pending before the state Supreme Court

11  called the *Walker* case, and among the challenges is

12  whether the State needs to produce the experts who do

13  known DNA exemplars, because the technology that produces

14  the exemplar is beyond the ken of ordinary jurors and

15  requires an expert.

16          Cellebrite is not self-authenticating.  It's not

17  something most of these jurors will even have heard of.

18  And so to simply say "I put data into a box, and this is

19  what it is; therefore, I rely on what the box tells me,"

20  that is expert testimony.

21          THE COURT:  What is the government's reluctance

22  here?

23          MR. PATEL:  I mean, I have no problem

24  declaring -- offering him as an expert.  Does defense have

25  an objection if we offer him as an expert?

1           MR. PATTIS:  I'm not going to claim untimely

2    notice.  I was surprised by the motion.  I didn't

3    understand what the issue was.  I thought perhaps the

4    witness didn't understand what he was using and there

5    was -- it's not a personal attack, Neeraj, never has been

6    in this case.

7           MR. PATEL:  No, no.  I'm just curious.

8           MR. PATTIS:  I didn't understand the import of

9    the motion.  If he has some ability to discuss validation

10   of the machinery, how it operates, whether it was up to

11   snuff at the time it was used, and so forth, you know, I

12   don't have a problem.  But to simply say he's going to

13   come in and read from the machine, you know, I don't buy

14   it.

15          MR. PATEL:  It's not a reluctance, Your Honor.

16   In all the cases where this particular forensic examiner

17   has testified in the last few years for the government,

18   he's never -- we've never had to qualify him as an expert

19   because the defense didn't object.  We can qualify him as

20   an expert.

21          MR. PATTIS:  Okay.

22          THE COURT:  Okay.  So that's denied as moot.

23          Motion to preclude evidence and/or argument of

24   the propriety of the government's prosecution, I'm not

25   sure what that's about.

1          MR. PATEL:  Well, Your Honor, in just speaking

2     with Attorney Pattis, it's our understanding, or at least

3     we were expecting, that he may try to examine the

4     witnesses about why the case was referred from the

5     Waterbury police department to the federal government for

6     investigation and prosecution.  We just don't believe

7     that's relevant.

8          MR. PATTIS:  I think to the degree the

9     government intends to hold my client accountable for his

10    perceived acts and omissions, the government here is also

11    on trial, and this is an extraordinary -- Mr. Patel is

12    right, that this is related to the nullification motions I

13    filed.  When this case stalled in state court, it stalled

14    in part, at least is my understanding, because of serious

15    credibility concerns about the witness.  This was a

16    pressure tactic designed to force a plea.  And I have very

17    strong views about this case.

18          I respect my adversaries, but I don't respect

19    the government's decision to prosecute this.  The notion

20    that this man, for one solitary film that was not shown to

21    anybody, was kept in his phone and promptly deleted, faces

22    a 15-year mandatory minimum for this offense, where two

23    years could have done it in the state court system, is

24    nothing short of a manifest injustice.  And unless I'm

25    explicitly prohibited from raising these arguments with

1  the jury, I intend to do so, so Mr. Patel's motion is well

2  taken.

3          MR. PATEL:  Your Honor, I would just note that

4  this is a 15-year-old girl, who was under the age of

5  consent.  First of all, his premise, he believes that this

6  was a referral from the state government to force a plea

7  because they had credibility issues, he's simply wrong.

8  That's not how this case originated.  But putting that

9  aside, this is not a matter for the jury.

10          MR. PATTIS:  It's always a matter for a jury.

11  You're asking a jury of his peers to render a verdict

12  about him.  We're asking a jury of his peers to render a

13  verdict about you.

14          MR. PATEL:  The jury's only task --

15          MR. PATTIS:  Excuse me.

16          MR. PATEL:  You interrupted me, so why don't you

17  wait.

18          MR. PATTIS:  No, you waited until --

19          MR. PATEL:  I paused because I was finishing my

20  sentence.

21          MR. PATTIS:  You didn't seek to interrupt me.

22          THE COURT:  Okay, okay, not good.

23          All right, go ahead.

24          MR. PATEL:  Your Honor, we briefed this, that

25  jury nullification is not permitted.  The courts have

1  prevented defense counsel from introducing evidence or

2  making arguments to the jury about jury nullification and

3  have, we would say, properly held that jurors should not

4  be instructed on jury nullification.  The only matter is

5  whether the evidence -- for the jury is whether the

6  evidence -- the government has proved the elements of the

7  crime beyond a reasonable doubt, not whether the

8  government's prosecution is just or unjust, or the

9  penalties, given the penalties, that it's a miscarriage of

10  justice.  That's a matter of law.  That's not for the jury

11  to decide.

12          MR. PATTIS:  The government overstates its case,

13  and its research is based on some faulty premises.  All

14  that *Sparf* and the United States Supreme Court held in

15  1895 is that a defendant is not entitled to a charge on

16  jury nullification.  Dicta said that that was because

17  jurors are to follow the law.  There's no Supreme Court

18  case on point.  The government acknowledged in argument

19  before jury selection that juries had the power to

20  nullify.  If I can't argue and give them evidence on which

21  they can use that power, it's a nullity.

22          So certainly the government has the obligation

23  to prove the elements of the offense it charged, but I

24  think the jury can make, as the conscience of the

25  community, make a conscientious decision about whether

1  this is a just allocation of the resources the government

2  is asking them to spend.  And to suggest that this is a

3  political question that should be taken up with the

4  legislature or one of the coordinate branches of

5  government is, in the context of a case alleging child

6  pornography, criminally naive.  There is not a legislator

7  alive that's going to give a break to a person who's got a

8  child pornography charge next to his name.  I think this

9  jury is entitled to know about what this case means so it

10 can make an intelligent decision about guilt or innocence.

11          MR. PATEL:  Your Honor, we filed an objection

12 this morning to his proposed jury instructions and quoted

13 from our opposition to the jury nullification motion which

14 we filed a couple weeks ago.  But I'm just going to quote

15 the Second Circuit:  "Nullification is a violation of a

16 juror's oath to apply the law as instructed by the Court.

17 We" -- meaning the Second Circuit -- "categorically reject

18 the idea that in society committed to the rule of law jury

19 nullification is desirable or that courts may permit it to

20 occur when it is within their power to prevent."

21          And they go on to say that the trial courts have

22 a duty to forestall or prevent jury nullification whether

23 by firm instruction or admonition.

24          That's pretty clear.  I understand defense is

25 citing a Supreme Court case from 1895; but recent

1  jurisprudence from the Second Circuit is jury

2  nullification arguments are not -- should not be before

3  the jury.

4          MR. PATTIS:  Jurors may have an obligation to

5  follow the law as instructed, but they make judgments

6  about guilt or innocence, Judge.  And that's more than

7  simply a mechanical application of what's put before them.

8  They're asked to make an intelligent decision.  I'm asking

9  for the right to inform this jury of why they're being

10 asked to make this decision, what the consequences of it

11 are, so that they can fully exercise their power.

12         THE COURT:  Okay.  Well, you know, I'm not sure

13 what kind of issues we're going to get into with respect

14 to the reasons for bringing this prosecution, so I think

15 I'll take that up on a question-by-question basis.

16         So Rule 412, first off, I take it the defense

17 intends to offer evidence of specific instances or

18 behavior, sexual behavior between the minor and the

19 defendant?

20         MR. PATTIS:  I have not filed a motion for

21 permission to raise other instances.  I didn't think it

22 was necessary.  I see the government's position, and if

23 they want to claim prejudice, I can try it without doing

24 that.  The evidence is, however, that they engaged in a

25 long-term relationship that her parents were aware of

1  because he saw her in the house, and the parents knew what

2  was going on and did nothing to stop it.  That was with

3  her.

4          She's had relationships with other men.  She

5  told the defendant on one occasion that she had children

6  with another guy and was recently divorced.  We'll

7  introduce pictures of her with one of her persona from

8  Facebook showing she reported to the world to be born in

9  '91.  She looks older than her stated age in some of her

10 more provocative poses on these social media sites.  So we

11 intend to offer that, if permitted to do so.

12         I don't care about her sexual escapades with

13 other people, about her sexual preferences or the postings

14 that suggested which orifices in her body she liked to

15 receive sex from other people from.  I'm not going after

16 that.  I have that material, but I don't think it really

17 helps in this case.

18         THE COURT:  Okay, but what I'm unclear on is

19 whether you're going to offer evidence of prior sexual

20 encounters between the defendant and the minor.

21         MR. PATTIS:  I'm going to ask her about their

22 relationship, when she took him to the house, how many

23 times he was at the house.  If not permitted to ask about

24 sex, the jury may infer that that was there.  But he was a

25 frequent guest in their home, knew her father, worked with

1    her father, had spoken with her mother, and so forth, so

2    that's as much as I'll get into.

3          MR. PATEL:  We intend to get into the nature of

4    their relationship without referring to any sexual

5    encounters, that they had known each other for a long

6    time, that they spent time together.  So I don't think

7    there's any issue there.  We're not going to refer to any

8    prior sexual conduct they engaged in with each other,

9    other than the incident that's alleged in the indictment.

10          MR. PATTIS:  Well, our view is if the government

11    does that, they've opened the door to it.  You can't show

12    half of a relationship and suggest that they were just

13    engaged in coloring and whatnot, when in fact they were

14    heating the sheets up for quite some time.

15          MR. PATEL:  I don't even know how that helps his

16    case.

17          MR. PATTIS:  It may not.

18          MR. PATEL:  But --

19          MR. PATTIS:  I've got to see what your direct

20    does.

21          MR. PATEL:  -- the statute is pretty clear that

22    if you're going to introduce it --

23          THE COURT:  Well, it's a rule.

24          MR. PATEL:  It's a rule.  Sorry, Your Honor.

25          THE COURT:  Yes, it is clear, and so what I'm

1   trying to figure out is whether to postpone the trial to

2   permit 14 days to elapse.

3           MR. PATTIS:  Well, I have a different issue

4   where I may request a continuance as to the government's

5   request to charge, but I'll wait to get to that.

6           THE COURT:  Okay.  I'm just trying to figure out

7   whether this is a technicality that the government is

8   going to insist on, or whether it will waive it and we can

9   postpone the trial and give the defendant a full

10  opportunity to have a defense.

11          MR. PATTIS:  I mean, I don't -- it's probably

12  misconduct on my part because I did not check the statute,

13  and I concede the government is correct.  I anticipated

14  this evidence would come in.  I did not intend to offer

15  any evidence of her conduct with others.

16          THE COURT:  Yes, right.

17          MR. PATEL:  My issue, Your Honor, is I don't

18  know what this is.  I've not seen what he's proposing to

19  offer, so I can't make a decision --

20          MR. PATTIS:  I intend to offer her testimony,

21  and I have material to impeach her with if she denies it,

22  and I have what he says, and I don't know whether that's

23  true.

24          MR. PATEL:  But if some of that falls under the

25  rule, I can't make a decision right now whether to waive

1    it or not because I haven't seen it.

2            MR. PATTIS:  All it is, is that they met, they

3    fell in lust or love, or whatever you want to characterize

4    it as, and they were frequently intimate.  And in the

5    course of that, she appeared ready, willing and able.  And

6    I'm not trying to put a consent defense on.

7            And, candidly, I can try the case without it.  I

8    don't know that I would seek a continuance, Judge, on that

9    basis.  I mean, I've prepared my client to try the case

10   without that.  I've gone through the government's motion

11   in limine and explained how the Court may rule on

12   different things.

13           MR. PATEL:  Your Honor, also, I just would note

14   that I can't be the only -- the government cannot only

15   waive because the notice has to be given to the guardian

16   or representative, and they have a right to be heard on

17   the matter too.  So even if, I'm not saying we would

18   waive, but even if we were to, the guardian still has to

19   weigh in here.

20           MR. PATTIS:  The problem is that she just -- she

21   was all, in her various persona, all over Facebook.  And,

22   I mean, some of it -- and I don't intend to offer these

23   things -- I don't know how much of it you've seen or how

24   deeply you've inquired, but she talks about how she likes

25   to have sex, what her preferences are.  And my client was

1    reading this.  He was with her.  She looked older.  She

2    said she had previously been married.  He thought he was

3    with an adult.  Now, that's it.  That's what he says.  Go

4    ahead and laugh.

5         MR. PATEL:  No.  I just think you should know,

6    and I'll say it on the record.  I don't know if you've

7    watched his recorded interview at the Waterbury Police

8    Department, but he says she's 15 years old.

9         MR. PATTIS:  He knew that at the time.  This was

10   after she threatened to take him for half his business and

11   tried to extort him on several occasions for money.  Yes,

12   she did drop the dime on him.  And this was at or about

13   the time she contacted his wife, and the wife

14   threatened -- she thought the marriage was going to end.

15   She wanted him back.  She sent him text messages saying,

16   Come back, I want one more night.  You know what I want.

17   Give me half of your business, and I won't complain.

18        These are things she did.  They may not be

19   relevant given her age, I understand that, okay, but to

20   suggest that she gets to come into this court under the

21   cloak of some patina of innocence and talk about one

22   discrete thing where she was the victim, when she clearly,

23   clearly engaged in this conduct in ways that led him to

24   conclude she was older than her stated age I think is

25   wrong.

1          MR. PATEL:  Well, we have not seen any of this

2     stuff, so I can't --

3          MR. PATTIS:  I don't intend to offer it unless

4     she denies it.

5          THE COURT:  Well, look.  We're clearly going to

6     get there, and so I'm trying to figure out where we're

7     going to go with this.

8          MR. PATTIS:  Let me tell you my more serious

9     issue, because I read the government's request to charge

10    this morning and -- may I, Judge?

11         THE COURT:  Yes.

12         MR. PATTIS:  I was startled to see the claims

13    pled in the disjunctive after reading the indictment that

14    talked about knowing or having reason to know the

15    depiction would be transported and visual depiction was

16    produced and transmitted using materials and transported

17    in interstate commerce.  The government's request to

18    charge shifts from the conjunctive to the disjunctive, and

19    then it requests that this Court tell the jury that the

20    jury need not find on any -- they can find on any one of

21    these three theories of liability.

22         Built in the government's request to charge is a

23    knowing requirement as to the first alternative; but then

24    in the second alternative, they charge no scienter at all.

25    He needn't know that it was interstate commerce.

1    This is a specific intent crime, at least in

2  many circuits, and so to eliminate scienter altogether as

3  an alternative basis for the charge, I feel prejudiced by

4  that because I read the indictment carefully, and it's

5  and, and, and, and, and.

6    And, you know, I'm prepared to defend on the

7  basis of the indictment.  I'm not prepared to defend on

8  the government's alternative theory expressed for the

9  first time in its request to charge.  Had I seen that, I

10  might have moved to dismiss certain claims in this -- in

11  this matter because, quite frankly, scienter is an

12  important issue.

13    And I would cite, for example, the cert grant

14  in -- the decision, rather, in remand in the *Elonis* case,

15  which admittedly is a First Amendment case, and therefore

16  the speech acts will be viewed with higher scrutiny.  But

17  one of the things that troubled *Elonis* is an issue that

18  lurks in the government's request to charge, and that is

19  the scienter issue.  In *Elonis* a man had posted

20  inflammatory stuff about his ex-wife on Facebook, and then

21  he was charged with a reckless mental state, and cert was

22  granted on the question of whether that eliminated

23  scienter in ways that were inconsistent with the First

24  Amendment claim.

25    If this is, in fact, a strict liability --

1 | excuse me, a specific intent crime, the government really

2 | can't proceed on a theory that permits this jury to find

3 | guilt without specific intent. And I think the

4 | government's request to charge does that. So I don't

5 | really know where we're headed right now.

6 | THE COURT: Well, okay. Don't assume that

7 | because the government requested a charge that I'm going

8 | to grant it.

9 | MR. PATTIS: I'm just reacting to the pleadings,

10 | sir.

11 | THE COURT: Yes. I mean, we'll have a charge

12 | conference, and we'll sort out what is the appropriate

13 | charge.

14 | But going back to my concern, I see a situation

15 | in which you're going to be offering (b)(1)(B) evidence,

16 | 412 (b)(1)(B) evidence, and the government is going to

17 | object that the 14-day notice and the hearing hasn't been

18 | held, and so I'm going to be in a situation where the

19 | evidence is not admissible, and yet it needs to be

20 | admitted. So...

21 | MR. PATTIS: I did that. I didn't do it

22 | intentionally. I did it --

23 | THE COURT: Well, that's why I'm asking whether

24 | the government intends to waive it. I don't think the

25 | government can waive the hearing. We would have to have a

1  hearing upon notice of the victim before we start the

2  trial.  But the government can waive the 14-day notice,

3  which is given -- I mean, there's a good cause exception

4  to the 14-day notice.

5          MR. PATTIS:  Well, I would make a claim of

6  excusable neglect.  I did not foresee -- I did not foresee

7  claims as to the victim as falling within the rape shield

8  prohibition.  I don't intend to offer evidence of conduct

9  with others.  But I did not foresee that there would be an

10  issue as to the course of their relationship.

11          THE COURT:  Right.  So I think we can either

12  postpone, or we can give notice to the victim today and

13  have a hearing Monday morning, or -- yes, Monday morning.

14          MR. PATEL:  If we can --

15          MS. KARWAN:  Your Honor, we just want to confirm

16  with the victim's guardian ad litem that she'll be

17  available Monday morning.  They were planning to be here

18  Monday afternoon, so we don't anticipate that would be an

19  issue, but she does attend regular court hearings on other

20  matters, so we just want to make sure she's available.

21          THE COURT:  Okay.  Well, this still requires a

22  motion.

23          MR. PATTIS:  Right.  I'll have to do a writing.

24  I won't be able to get to it until midday tomorrow.  I'll

25  see if I can swap a commitment I have in Stamford tomorrow

1  with somebody else, and I'll get something filed by noon.

2        THE COURT:  All right.  Well, so what we'll do,

3  then, is we'll set the hearing for Monday morning, 9:00.

4  We'll get a motion tomorrow.  That will be served on all

5  parties, that is, the government, and does the government

6  intend to notify the victim?

7        MR. PATEL:  We can do that, Your Honor, yes.

8        THE COURT:  Okay.  And we'll postpone the

9  arrival of the jury until noon, until 1:00.  Okay?  Does

10  that work for everybody?

11        MR. PATEL:  Yes, Your Honor.

12        THE COURT:  Okay.  And then there's a motion to

13  preclude evidence of the victim's consent.

14        MR. PATTIS:  That's a difficult motion.  If I'm

15  permitted to put on evidence about reasonable mistake as

16  to age, some of that evidence would look like consent

17  evidence.  I don't intend to argue consent.  But some of

18  that evidence would be overlapping in character.  So...

19        MR. PATEL:  I'm not sure I understand.

20        MR. PATTIS:  If I'm entitled to a charge that he

21  made a reasonable mistake as to her age because she

22  represented herself to the world as older, and appeared

23  older, and acted older, and said she was older, and he was

24  around parents who had reason to suspect that he might

25  have been engaged in conduct with her, and they said

1 nothing, that would be my proffer as to why he had reason

2 to believe that she was of age. It looks almost like

3 consent. It's very close to consent-type evidence. You

4 know, did she pursue you? Yes. Did she offer things to

5 you? Yes. Did you accept it because you thought she was

6 of a certain age? Yes.

7       I mean, I can't lead him, but you can expect if

8 he testifies that to be the sort of testimony that they'll

9 hear. And that looks like -- it feels a lot like consent

10 evidence to me, so I don't know how to react to your

11 motion, and I think it depends on whether the Court is

12 going to permit me to put that other evidence on.

13       MR. PATEL: I think that's right. I think

14 it's -- whether he's going to be allowed to put that other

15 evidence on and whether it's -- I mean, we know he's asked

16 for a mistake of age instruction, and we've opposed that

17 this morning, saying that the law doesn't allow a mistake

18 of age defense.

19       MR. PATTIS: Well, some circuits do, but I

20 pirated one from a circuit where I found that it did work,

21 but I didn't pirate all of it for the following reason. I

22 can't remember if it's the Eleventh or the Ninth Circuit,

23 but in their pattern instructions they have that, and I

24 used that language in my request to charge. That circuit

25 went on to say, however, and I did not include this, that

1    evidence of this is -- it is the burden -- the burden is

2    on the defendant to produce proof of this by clear and

3    convincing evidence.

4             I take the position that that is impermissible

5    burden-shifting, and this would be much like self-defense,

6    in a state court proceeding at least, and that is if the

7    defendant puts on some evidence, the Court is then obliged

8    to charge, and the charge gives the burden to the

9    government to disprove the defense by proof beyond a

10   reasonable doubt.

11            I was surprised to see the federal language on

12   this, that the burden shifted to the defendant.  And I

13   double-checked the cases I rely on in state courts for

14   this burden-shifting problem.  They don't recite any

15   federal cases.  So I'm trying to be candid with you, but I

16   would like to preserve that issue.  I don't think the

17   burden ever shifts to the defense.

18            MR. PATEL:  In our response this morning, Your

19   Honor, we noted that that's the Ninth Circuit that has

20   that pattern instruction.  It is the only circuit.  And

21   every other circuit that has had this issue on appeal has

22   rejected the Ninth Circuit's reasoning and said there is

23   no mistake of age instruction.  The Second Circuit hasn't

24   opined on that specific issue, but they have said that

25   scienter is not an element of the crime that the

1   government has to prove.  And the Ninth Circuit case that

2   the pattern instruction relies on does say it is the

3   defendant's burden --

4           MR. PATTIS:  It does.

5           MR. PATEL:  -- to come up with clear and

6   convincing evidence.

7           MR. PATTIS:  But this is where I'm just

8   fundamentally confused about this prosecution.  I defer to

9   the government because they've done these cases before.

10  This is the first time I've defended this charge.

11          I don't know how you can -- if, in fact, this is

12  a specific intent crime, how do you take scienter out of

13  it?  That is the most culpable mental state under the

14  model penal code in every jurisdiction that has that, and

15  specific intent is the conscious objective to accomplish

16  some unlawful purpose, in particular the purpose charged.

17  It's even more than general intent, which as the Court

18  knows from 1983 litigation you only have to engage in the

19  conduct.  You don't have to have the intent to violate the

20  constitutional right.

21          So, frankly, I think the law in this area is

22  incoherent, and the government can't have it both ways.

23  You can't charge a specific intent crime that relies on

24  knowing commission of an act and then say scienter doesn't

25  matter.  Of course it does.  That's all that does matter.

1          THE COURT:  Well, I'm inclined to let this

2    evidence in, whether it constitutes consent evidence or

3    not.  It seems to me that the jury is entitled to have a

4    fulsome understanding of the activities that give rise to

5    criminal liability, and often this is used by the

6    government to introduce evidence, but here it's being used

7    by the defense, and I think the principle applies equally

8    here.  So I'm inclined to allow this evidence.  And we'll

9    figure out what the charge is going to be later.  But I

10   think -- I think it comes in.

11          The motion to preclude under evidence of the

12   related civil case I think is pretty clear.

13          MR. PATTIS:  I just want to tender the following

14   objection:  Interest in the outcome is never collateral,

15   and it falls within the Sixth Amendment right to confront

16   a witness.  I've read the statute, and I understand what

17   it says, but my view is the statute is unconstitutional

18   and deprives a defendant of his Sixth Amendment right to

19   confront a witness.

20          You should be aware, Judge, that if the Court

21   maintains its ruling, we have evidence that she posted a

22   copy of the U.S. Attorney's press release on this case on

23   one of her websites, and she is also -- of this case.

24   She's also talked extensively about the lawsuit on her

25   social media sites.  And she has tried to shake my client

1   down for money under the threat that this would go away if

2   it did come up.  So I'm not sure if it's just the lawsuit

3   itself, you know, that I can't raise; but she's got a

4   pecuniary interest in the outcome, and that suit

5   represents it.  So for the statute to say, you know, you

6   get to sue on the basis of it, but you can't mention it I

7   think is in violation of the Sixth Amendment right to

8   impeach a witness on her interest in the outcome of the

9   case.  And her credibility, if permitted to put on

10  evidence about reasonable mistake as to age, her

11  credibility is going to be front and center before the

12  jury, because if she's going to lie, lying to make a buck

13  is one of the oldest motives that defense lawyers always

14  pursue in cases.  So I think it's a violation of his Sixth

15  Amendment right.

16          THE COURT:  Okay.  Maybe I should receive

17  further briefing on that.

18          MS. KARWAN:  Your Honor, we'll also submit

19  something on the mistake of age further briefing because

20  it's an issue that's -- at least as the scienter issue

21  that Attorney Pattis has raised and expressed some

22  interest in knowing further on, there is significant

23  Second Circuit case law which we will be happy to share.

24  So we can brief both issues.

25          MR. PATEL:  Just so the Court knows, on the

1    civil case issue, 3509(k), the statute says you can't

2    mention it.  I have not -- I looked.  There's not a single

3    case that discusses it that I could find.

4            MR. PATTIS:  That section has been around for

5    eight or nine --

6            MR. PATEL:  I know.

7            MR. PATTIS:  -- years now.  It's been a while.

8            MR. PATEL:  I'll be frank.  I looked for a

9    couple of days way back when and could not find a single

10   case that discusses that statute.

11           MR. PATTIS:  That surprises me.  Do many of

12   these case go to trial?  They're just so bad.  But for the

13   consequences I would really try to work it out for you.  I

14   just can't bring my client to the table.  I mean, that

15   seems to me an obvious move on the defense to challenge on

16   the Sixth Amendment because interest in the outcome is

17   never collateral, you know, to me.

18           MR. PATEL:  I understand what you're saying.

19   I'm just saying we can brief it, but there's no case

20   that's going to be directly on point because there's no

21   case that discusses the statute about that.

22           THE COURT:  Okay.  Do you anticipate other

23   motions?

24           MR. PATTIS:  I don't know.  I mean, I reviewed

25   and spoke to fellow defense lawyers, my confirmation bias,

1   this business about conjunctive and disjunctive thing, and

2   I need to make the Court aware of a case that stands

3   contrary to my argument, out of candor to you.  It's

4   called *United States v. Rioux*, R-i-o-u-x, at 97 F.3d 648.

5   There is language in *Rioux* that undermines my position,

6   and that language is found at page 661.

7          In *Rioux* -- this was the Hartford high sheriff

8   that was prosecuted many, many years ago, and Jim Wade

9   took the appeal, Second Circuit case.  And in that case

10  the indictment charged that Rioux had threatened to

11  suspend and terminate somebody, and then he was found to

12  have only engaged in one of those acts.  And so they tried

13  to make a claim of a constructive amendment to the

14  indictment.  And the Second Circuit said, No, it's not, in

15  language that says that when the government charges in the

16  conjunctive, its proof in the disjunctive satisfies that.

17         But my claim is that's distinguishable from the

18  case here because in *Rioux* what we're talking about are

19  predicate facts on which the indictment was based.  In

20  this case what we're talking about are alternative legal

21  theories, and the notice that we were provided coming into

22  this case was simply that he had knowingly engaged in this

23  conduct and done other things.  If the jury is permitted

24  to ignore scienter and say, well, even if you find he

25  didn't knowingly do this, if it affected interstate

1  commerce, that's okay, it eliminates scienter altogether,

2  and that's a devastating problem for us because, candidly,

3  it's no surprise what the case is about.  Our defense will

4  be, and the closing argument will probably be, Ladies and

5  gentlemen of the jury, he didn't know.  Look at the

6  government's proof.  They spent how many hours here

7  getting somebody in from Google, getting the FBI guy in

8  here, getting somebody in to talk about Cellebrite, which

9  you never heard about?  It took all of these

10 professionals, with all of the years of experience,

11 training and education that they've had to reach that

12 conclusion.  How many of you know what happens with an

13 email you put in your pocket today and save?  Do you know

14 how many state boundaries that crosses, if at all?  My

15 client didn't know.  He couldn't have known.  It took five

16 experts and five hours for the government to prove this

17 case, and that's reason enough to acquit.  And, basically,

18 that's our defense here.

19             MR. PATEL:  Your Honor, I think it's well

20 settled in Second Circuit and almost every other circuit

21 that there -- and I've researched this in the last two

22 hours after --

23             MR. PATTIS:  We talked this morning.

24             MR. PATEL:  -- Attorney Pattis called me -- that

25 indictments can be worded in the conjunctive, but a

1  conviction will be sustained if the evidence indicates

2  that the statute was violated in any of the ways charged.

3  And every circuit has basically said it is well settled

4  that an offense be charged conjunctively in an indictment,

5  but proved just disjunctively.

6          MR. PATTIS:  But here's the problem with that.

7          MR. PATEL:  And there's a case just on point on

8  2251 in the Seventh Circuit where I think the defense

9  raised the same argument that Attorney Pattis is raising

10 here, and the Court rejected the claim.

11         MR. PATTIS:  There is a lingering issue that we

12 have in front of the State Supreme Court right now, Judge,

13 and it is as follows.  I don't know what the Court will do

14 with the disjunctive theories; but in the government's

15 charge, for example, it tells the jury that it can find on

16 any one of these.  There's no unanimity requirement as to

17 this.  And so in many courts around the United States when

18 there are disjunctive theories, the government -- the

19 jurors are not instructed, especially if they pertain to

20 an affirmative defense, that they have to be unanimous on

21 which theory.  So I don't know if the government is going

22 to take the position that this jury could split four, four

23 and four on the alternatives and still convict.  If so, I

24 think that violates the unanimity requirement.

25         MR. PATEL:  I think -- I'm not certain, I would

1  have do some research -- but I think that it doesn't have

2  to be unanimous as to which of the three alternative ways

3  interstate commerce elements have to be satisfied.

4          MR. PATTIS:  See, that's a huge problem because

5  I think --

6          THE COURT:  Well, I think the law is otherwise.

7  I think the law is that -- I mean, whenever things are

8  charged and there's more than one option, the jury has to

9  agree on which option has been satisfied.  I think that's

10  fundamental.

11          MR. PATEL:  I just remember seeing something

12  recently about it.  I would have to go back --

13          MR. PATTIS:  Here's where it comes up

14  frequently.  So we had a case pending before a judge in

15  state court, Mekoshvili, and we raised an affirmative --

16  self-defense is our defense in that case.  And under state

17  law there are four things that the State must disprove to

18  accomplish -- if the State disproves any one of four

19  things, the defense fails.  And so we requested a charge

20  that the jury be told it had to be unanimous on which of

21  the four in this defense, and the Court held no.  So we've

22  taken that up.

23          And I think the cases seem to break in the

24  following way, that when it pertains to the defense, a

25  defense raised, it needn't be unanimous because that's not

1    an element of the crime charged.  I'm not aware of a case

2    that says that the jury needn't be unanimous on an element

3    of the crime charged.  So I think the fault line is on

4    whether it's a defense or the crime charged.  I just don't

5    know that.

6            MR. PATEL:  I just remember seeing something in

7    the last couple of months.  I just don't remember which.

8    It was about this statute, and I just don't remember what

9    the case was.  I'll have to look.  But I think the more

10   fundamental issue is whether we need to prove all three or

11   not, which is what Attorney Pattis is suggesting.

12           MR. PATTIS:  I do claim prejudice on that.  I've

13   read the indictment.  It is charging these things as three

14   elements of the same offense, not three alternatives.  And

15   it didn't say this, or that, or this.  And now to suggest

16   that we get -- the jury can pick one of the above and the

17   suggestion they needn't even be unanimous about it I think

18   is an enormous prejudice to the defendant.  If we're going

19   to have a charge conference later, fine.  The evidence can

20   proceed.  I'll make an application in the course of trial.

21   But it's -- I was surprised, I was shocked when I read the

22   jury instructions, Your Honor, to see the disjunctive in

23   there.

24           THE COURT:  Okay.  Well, I'll take a look at it.

25           So how long is the evidence going to take?

1           MR. PATEL:  Well, if we're starting at 1:00, I

2  think we'll be done by -- the government's case -- by the

3  afternoon of the second day.

4           MR. PATTIS:  We had spoken a lot, Attorney Patel

5  and I, and if I put witnesses on, I have character for

6  truthfulness in the community witnesses, anticipating

7  they'll testify, coming in at 2:00, so I can postpone

8  them, I hope.  So I don't know if he'll testify.  He won't

9  be a very good witness on his own behalf.  So I think it's

10  a day and a half, maybe two days tops if something funky

11  happens, but it's a quick case.

12           MR. PATEL:  I think a lot of it is going to

13  depend on how long his cross-examination of the victim is

14  going to be.

15           MR. PATTIS:  It's not going to be that long.

16           MR. PATEL:  My direct examination of her will

17  probably be 30 minutes; but if there's going to be a long

18  cross with all of these posts that he's suggesting he has

19  from social media, then it could be a lot longer.

20           MR. PATTIS:  It could be an hour to an hour and

21  a half.  I don't think I'll be given a lot of leeway from

22  the jury, so I think I have to get what I can get out

23  quickly, so it's not going to be a day-long cross.

24           THE COURT:  So we should plan on the charge

25  conference Tuesday evening, okay --

1          MR. PATTIS:  Yes, sir.

2          THE COURT:  -- if everybody is free?  All right.

3          Well, let's get back to kind of who's going to

4    testify here.  Both of you listed a lot of witnesses.

5          MR. PATEL:  Your Honor, I can tell you who the

6    government is going to present on the first day and a

7    half.

8          THE COURT:  Okay.

9          MR. PATEL:  It'll be Kim Binette from Waterbury

10   police.

11         THE COURT:  Okay.

12         MR. PATEL:  Carmen Woodkirk from Waterbury, or

13   formerly from Waterbury police.  She will probably not be

14   more than ten minutes.  Detective Pete Morgan from

15   Waterbury police.  Special Agent Noto over here.  A

16   records custodian from Google; her name is Chelsea Clays.

17   The victim.  And the FBI digital forensic examiner,

18   Emanuel Hatzikostas.  And then Waterbury Detective Dan

19   Dougherty.

20         THE COURT:  Okay.

21         MR. PATTIS:  Kevin Smith from my office will be

22   attending trial with me, and we intend to call most of the

23   people on that list, but not all.  I've given Mr. Patel

24   copies of statements they've given in anticipation of

25   sentencing in state court.  But even if I called -- and I

1  don't intend to call Don Thurkitson, the Waterbury's

2  state's attorney.  Even if I called every single person on

3  that list, I could get through my direct of them in about

4  an hour, and I've done a similar list in that period.  The

5  reason for having Mr. Smith is to manage the flow of

6  bodies in and out of the courtroom.  Whether there will be

7  much cross-examination, I don't know.

8          I don't know if Mr. Manzano will testify.  I

9  haven't tried a federal criminal case in a while, a bunch

10  of state ones.  I don't know if you canvass defendants on

11  their decision to testify.  He's a very quiet kid.  He was

12  in my office for a while this morning preparing.  I don't

13  know what his intentions are.  He's hard to read.

14          THE COURT:  All right.  Well, we'll definitely

15  canvass him if he's thinking about or if he decides not to

16  testify.  We'll make sure he understands the right.  Okay.

17          MR. PATTIS:  I've also informed the

18  government -- and I should probably put on the record --

19  he has a sister, Carmen, who attempted to be overly

20  involved in the defense, and I will not be calling her.

21  She's on the witness list, but I actually am concerned

22  about not her doing violence to people, but -- and I'm not

23  concerned about that -- but she is just so outraged, such

24  a chatterbox with this.  I've alerted the government that

25  they should take pains to keep an eye on her during trial

1    because I'm worried about influence on witnesses, and so

2    forth.

3          There have been savage communications between

4    the families of this case, none of which would give rise

5    to prosecution even to an ambitious federal prosecutor or

6    state prosecutor, but I'm just -- I'm just bugged by the

7    level of hostility between the warring parties here.  I

8    was relieved to see that the government was not calling

9    MM's mother.

10          THE COURT:  All right.

11          Well, exhibits.  Which of these are you going to

12    offer?

13          MR. PATEL:  We intend to offer -- we only put on

14    what we intend to offer.

15          THE COURT:  All right, sounds good.  Any --

16    well, first off, do you know what these are?

17          MR. PATTIS:  Yes, sir.  They've been provided to

18    me, long in advance, a comprehensive list of exhibits, a

19    list of items in the government's possession.  Last week,

20    I think, or perhaps the week before I called Mr. Patel in

21    a panic wondering how many of them he intended to offer,

22    and then this book reassures me.  So I've seen them all.

23    Assuming appropriate foundations are laid, there's none

24    that I can imagine will be a problem.

25          THE COURT:  All right.  We passed out a copy of

1   the pretrial jury instructions.  If you read that and have

2   any issues, let us know tomorrow.  I intend to read that.

3   The jury is not going to get a copy of it, but --

4               MR. PATEL:  My one concern, just reading the

5   first page, Your Honor, is what we've been talking about,

6   and that's the third element of Count One, as it's worded,

7   it only talks about the visual depiction being transported

8   in interstate commerce, but the indictment alleges two

9   other methods to prove the interstate commerce element,

10  whether the materials that produced the child pornography,

11  mainly the cellphone, traveled in interstate commerce, or

12  whether the visual depiction actually was transmitted in

13  interstate commerce.

14              MR. PATTIS:  And the problem there is going to

15  be, Judge, that the government seems to suggest that those

16  latter two theories don't have a knowing requirement, and

17  that takes scienter and specific intent out of the case,

18  which I think is wrong.

19              THE COURT:  Is there law that says if the

20  cellphone is produced outside of the United States?

21              MR. PATEL:  Yes, Your Honor.

22              THE COURT:  That's ridiculous.  Okay.

23              Well, if you propose -- if you propose a change

24  to that, let me know.

25              MR. PATEL:  We'll file something.

1          MR. PATTIS:  I don't know, Judge, whether to

2     make an application to postpone the trial to sort these

3     issues out, but I remain shocked that the government

4     intends to proceed in a specific intent crime on theories

5     that don't involve knowing, or a knowing participation or

6     scienter, and I'd really like to know that before the

7     evidence begins.  Maybe I don't need to, I'm an adult,

8     I'll try the case and make my motions as the case

9     proceeds, but this is a startling turn of events for me.

10          MR. PATEL:  I think the case law is pretty

11     clear.  This is how we've been prosecuting these cases for

12     a while now, and having done the research --

13          MR. PATTIS:  Not with me.

14          MR. PATEL:  I understand that; but I think the

15     case law is clear that if the cellphone, the computer, the

16     tablet moved in interstate commerce, and that was used to

17     produce the child pornography, that can satisfy the

18     interstate commerce element.

19          MR. PATTIS:  I am not aware of a case that says

20     that the government can dispense in a statute that is a

21     specific intent defense with the knowing requirement.  And

22     I would like -- and I think if we have to brief it at the

23     level of the Second Circuit, fine.  And it may be that the

24     way to proceed here for preservation purposes is to make

25     sure there's a special interrogatory, so if we know

1   there's a conviction, we know on what basis it is.  But I

2   certainly don't want to have a trojan horse record where

3   the jury is free to mix and match which of the

4   government's theories it's going to convict on, and then I

5   can't show prejudice on it.

6           MS. KARWAN:  Attorney Pattis, what about the

7   felon in possession statute?  The possession of the gun

8   has to be knowing, but the travel of the firearm in

9   interstate does not have to be knowing.

10          MR. PATTIS:  That's one element of the offense.

11  It's not a separate basis for proving the offense.  That

12  would be my claim.  So that I could argue --

13          MS. KARWAN:  As charged, we charge it as an

14  element of the offense, that interstate transportation --

15  the interstate connection of the firearm, but we don't

16  charge that the defendant had to know that the gun

17  traveled interstate.  I'm just trying to offer --

18          THE COURT:  But the issue there is the

19  wrongfulness is the possession of the firearm.

20          MS. KARWAN:  Right, where here the

21  wrongfulness --

22          THE COURT:  But here the wrongfulness is not the

23  possession of the cellphone.  There's nothing unlawful

24  about possessing a cellphone even if it is manufactured

25  out of state.

1           MS. KARWAN:  Right.  It's the production of the

2     depiction of the child pornography.

3           THE COURT:  Right, right, exactly.

4           MS. KARWAN:  But there is a knowing element

5     associated with that.

6           MR. PATTIS:  But, my -- again, I may not know

7     the law.

8           MS. KARWAN:  I'm just trying to offer what I

9     thought was an analogy.

10          MR. PATTIS:  No, I'm not being a smart aleck.

11          MS. KARWAN:  I don't think you are.

12          MR. PATTIS:  As I understood the case, the

13    government was intending to show that he knowingly

14    possessed this stuff and had reason to know that it was

15    going to go in interstate or foreign commerce; and, in

16    addition, the phone went in interstate commerce; in

17    addition, whatever the third one was; that these were

18    elements of the offense.  They seem to be offering them as

19    different alternatives for proving the offense, and that

20    deprives the defendant of the knowing requirement that I

21    think is implicit in the statute.

22          And, again, you know, it's not clear to me that

23    all the circuits agree that this is a specific intent

24    offense, it's not clear to me that every circuit has

25    decided that; but if it is, I don't see how you can

1  eliminate the knowing requirement on an alternative basis

2  for conviction.  I just don't understand that.

3          MR. PATEL:  I think that's how the case law has

4  interpreted it, and that's the instruction that's been

5  provided in this circuit and other circuits.

6          MR. PATTIS:  I'm not aware that anybody has

7  challenged the issue in this forum, and we intend to here.

8          THE COURT:  Well, okay.

9          MR. PATTIS:  Especially given the recent Second

10  Circuit decisions on scienter in the white collar context.

11  If there's going to be an enhanced burden on a white

12  collar case where there are far less punitive

13  consequences, it seems to me the defendant should get the

14  benefit of that in this case where the consequences are so

15  dire.

16          THE COURT:  Okay.  Well, you started out by

17  saying you're not sure whether you should move to

18  postpone.  If you're going to move to postpone, we should

19  hear that motion quickly because the jury is planning to

20  come in on Monday.

21          MR. PATTIS:  Candidly, I was out of the office

22  today and have not had a chance to read Mr. Patel's

23  response that was apparently filed in the course of the

24  day.  I would like permission to read that and respond

25  tomorrow morning.

1              THE COURT:  Fine.  Okay.

2              Well, do you want to make opening statements?

3              MR. PATEL:  Given the short nature of the trial,

4    we hadn't planned on moving for opening statements.

5              MR. PATTIS:  Without knowing whether my client

6    would testify, if I were to give one, I'd ask for it

7    before I began my case.  If he didn't testify and I did

8    have one, what would I be doing but giving two closing

9    arguments.  So I would join the government's --

10             THE COURT:  All right.  I prefer not to have

11   them, so that's fine.

12             The verdict form, especially if there are going

13   to be interrogatories, is something that I'd like to have

14   the benefit of your input on.

15             I charge before your closings.

16             MR. PATTIS:  Have you changed that?  It's been a

17   long time since I've tried something before you.

18             THE COURT:  No, I've done that from the

19   beginning.

20             MR. PATTIS:  Okay.  I don't remember that.  I'm

21   getting old.

22             THE COURT:  I do have a break, and I kind of

23   finish up the charge after closings.  But I like to tell

24   the jury what they have to decide and then let you argue

25   about whether you've shown it or not.

1          Okay.  I'm going to try to ask you to limit your

2    speaking objections.  If you need a sidebar or something

3    like that to preserve an argument, maybe we should do

4    that.  But I don't know that the jury needs to hear long

5    objections.

6          MR. PATTIS:  I'll behave, Judge.  I won't make

7    my nullification argument through objections.

8          THE COURT:  All right.

9          I let the jurors take notes.  I give them a copy

10   of the final jury instructions to follow as they are

11   delivered.  And those are my quirks.  When we get to

12   closings, I'll have more to say.  We'll talk about

13   closings at the charge conference.  But anything else that

14   anybody wants to raise?

15         MR. PATTIS:  No, sir.

16         MR. PATEL:  No, Your Honor.

17         THE COURT:  All right.  So if you could let

18   people know as soon as possible whether you're going to

19   move for a continuance.

20         MR. PATTIS:  Okay.

21         THE COURT:  I'm open to it because I think there

22   are a lot of issues here that are just coming to the fore

23   at the end, and I think that this is a case that the

24   consequences are quite significant, and he deserves a fair

25   trial.  So...

1          MS. KARWAN:  Your Honor, the government is going

2    to object to any continuance.  We have a competing

3    interest where we have a teenager victim here that has

4    been prepared and is ready to go and is quite nervous and

5    upset, and I understand Attorney Pattis's beliefs she is

6    one thing, but we have a set of obligations that we

7    believe just as deeply in as he does in defending

8    Mr. Manzano, and we need to be faithful to those.  We have

9    a victim who -- and a guardian who have prepared for trial

10   and are expecting and ready to go forward.

11          MR. PATTIS:  Who is the GAL?

12          MR. PATEL:  Maura Crossin.

13          THE COURT:  You're free to object.  I'll

14   consider the motion and the objection, and we'll go from

15   there.  Any other issues?

16          MR. PATEL:  No, Your Honor.

17          THE COURT:  Okay.  Thanks for coming in.

18          (Proceedings adjourned at 5:56 p.m.)

19

20

21

22

23

24

25

C E R T I F I C A T E

No. 3:18-cr-00095-sru
United States of America v. Yehudi Manzano

      I, Sharon L. Masse, RMR, CRR, Official Court
Reporter for the United States District Court for the
District of Connecticut, do hereby certify that the
foregoing pages are a true and accurate transcription of
my shorthand notes taken in the aforementioned matter to
the best of my skill and ability.

November 7, 2018

/S/ Sharon L. Masse
Sharon L. Masse, RMR, CRR
Official Court Reporter
915 Lafayette Boulevard
Bridgeport, Connecticut  06604
Tel: (860)937-4177